UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Allstate Insurance Company, Allstate ) <br> Property & Casualty Insurance Company, ) <br> Allstate Indemnity Company, and Allstate ) <br> Vehicle and Property Insurance Company, ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> Electrolux Home Products, Inc., ) <br> ) <br> Defendant. ) <br> _____) | Civil Action No.: 4:16-cv-03666-RBH <br><br><br><br><br><br><br> **ORDER** |

This is an insurance subrogation action. The matter is before the Court for a ruling on Defendant's Motion to Sever, to Dismiss, and to Transfer Divisions. *See* ECF No. 6. The Court denies in part and grants in part Defendant's motion for the reasons herein.[1]

**Background**

Plaintiffs provided insurance coverage to five different property owners in South Carolina who suffered losses in fires allegedly caused by a defective design in clothes dryers manufactured by Defendant. Plaintiffs, as subrogees of their insureds, filed this products liability action against Defendant alleging causes of action for strict liability and negligence and seeking both actual and punitive damages. *See* Complaint [ECF No. 1]. The Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

In their complaint, Plaintiffs allege Defendant designs, manufactures, and sells gas and electric "ball-hitch" style clothes dryers. *Id.* at ¶ 3. The ball-hitch design includes the following features: (1)

---

[1] Pursuant to Local Civil Rule 7.08, the district court may decide motions without a hearing. The Court has reviewed the parties' filings and determined a hearing in this matter is unnecessary.

a dryer drum that rotates around a fixed rear axis and contains a void space located directly behind the dryer drum, (2) a blower motor encased in a blower housing, and (3) a trap duct with a mesh lint trap located in front of the dryer cabinet. *Id.* at ¶¶ 12-13. In 1995 and 1996, Defendant changed the materials used in certain components—including the blower housing and trap duct—from steel to combustible plastics. *Id.* at ¶¶ 14-16. During testing, a dryer lit on fire: the fire ignited in the dryer cabinet and spread to the plastic trap duct. *Id.* at ¶ 18. Further testing showed a fire that started in the dryer cabinet could spread to the blower housing and trap duct, where the plastic components could melt and spread fire outside the dryer cabinet. *Id.* at ¶¶ 19-20. Additionally, Defendant received consumer complaints and warranty claims about fires in the dryers, and one of Defendant's product engineers acknowledged during an investigation by the Japanese government that lint could travel from the dryer drum and ignite either the contents of the drum or lint accumulated in the lint trap. *Id.* at ¶¶ 21-22, 24-25. The Japanese government forced a recall of Defendant's ball-hitch dryers in 2005, but Defendant never issued a similar recall in the United States and never informed the Consumer Product Safety Commission of the fire risks associated with the dryers. *Id.* at ¶¶ 25-28.

Plaintiffs further allege that their insureds/subrogors had Defendant's ball-hitch dryers installed on their properties and that the dryers ignited and caused significant fire-related property damage. *Id.* at ¶¶ 31-34. Plaintiffs' complaint includes the following chart summarizing the five separate losses:

|    | **Subrogors** | **Dates of Loss** | **Loss Locations** | **[Plaintiffs] Paid Out in Excess of** |
|----|---------------|-------------------|--------------------|----------------------------------------|
| a. | Lewis Mark & Erin Bryant | 7/26/2015 | 117 Elrod Place Drive Piedmont, South Carolina | $23,917.81 |
| b. | Mark W. & Erika Chapman | 11/18/2013 | 1112 South Edisto Drive Florence, South Carolina | $33,208.77 |
| c. | James M. & Laura Jennings | 11/19/2014 | 1115 Flint Hill Street Rock Hill, South Carolina | $226,806.16 |

| d. | Carrie C. Samuel | 11/29/2013 | 103 Manning Court Greenwood, South Carolina | $15,138.28 |
| e. | Cynthia Tipler | 2/15/2014 | 26 War Admiral Way Greenville, South Carolina | $12,971.92 |

*Id.* at ¶ 4. As a result of the losses caused by the fires, Plaintiffs' insureds/subrogors made claims on their respective insurance policies, and Plaintiffs duly paid these claims. *Id.* at ¶ 35. Plaintiffs then brought this subrogation action against Defendant, and Defendant filed the instant Motion to Sever, to Dismiss, and to Transfer Divisions. *See* ECF No. 6. Plaintiffs filed a response in opposition, and Defendant filed a reply. *See* ECF Nos. 8 & 9.

## Discussion

In its motion, Defendant requests that the Court (1) sever the five claims asserted in Plaintiffs' complaint, (2) dismiss four of the severed claims for lack of subject matter jurisdiction, (3) transfer the remaining claim to the Rock Hill Division of this Court, and (4) dismiss Plaintiffs' claim for punitive damages. *See* ECF No. 6.

### I. Severance

Defendant asserts Plaintiffs' complaint asserts "five improperly consolidated claims," and Defendant asks the Court to sever these claims pursuant to Federal Rule of Civil Procedure 21. ECF No. 6 at 1; ECF No. 6-1 at pp. 3-10. Defendant argues severance is necessary to avoid unfairness, prejudice, and jury confusion. ECF No. 6-1 at p. 3. As explained below, the Court finds severance is not warranted.

#### A. Applicable Law

"Under the Rules [of Civil Procedure], the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly

3

encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). Rule 18 permits a party to join "as many claims as it has against an opposing party." Fed. R. Civ. P. 18(a). Rule 20 governs permissive joinder of parties and allows plaintiffs to join in one action if "(A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1).

Rule 21 allows a district court to "sever any claim against a party," even when that claim has been properly joined. Fed. R. Civ. P. 21; *see Tinsley v. Streich*, 143 F. Supp. 3d 450, 462 (W.D. Va. 2015). "Courts typically use Federal Rule of Civil Procedure 20(a)(1)'s preconditions for permissive joinder to evaluate whether severance is appropriate." *Allstate Ins. Co. v. Electrolux Home Prod., Inc.*, No. 1:16CV1946, 2016 WL 6995271, at *1 (N.D. Ohio Nov. 30, 2016). There is a presumption against severance, and the party seeking severance must "show that (1) it will be severely prejudiced without a separate trial; and (2) the issue to be severed is so 'distinct and separable' from the others that a trial of that issue alone may proceed without injustice." *Equal Rights Ctr. v. Equity Residential*, 483 F. Supp. 2d 482, 489 (D. Md. 2007). To determine whether severance of claims is proper, courts consider: (1) whether the issues sought to be tried separately are significantly different from one another; (2) whether the separable issues require different witnesses and different documentary proof; (3) whether the party opposing severance will be prejudiced if it is granted; and (4) whether the party requesting severance will be prejudiced if the claims are not severed. *Grayson Consulting, Inc. v. Cathcart*, No. 2:07-CV-02992-DCN, 2014 WL 1512029, at *2 (D.S.C. Apr. 8, 2014) (quoting *Equal Rights Ctr.*, 483 F. Supp. 2d at 489).

**B.     Analysis**

4

Initially, the Court notes that similar consolidated cases involving the same alleged design defect are pending in other courts, that Defendant has moved to sever and dismiss the joined claims in each case, and that all but one[2] of the motions has been denied. *See Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 1:16-cv-09639, Doc. 23 (N.D. Ill. Mar. 31, 2017) (forty-six claims); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 16cv6804, Doc. 27 (S.D.N.Y. Dec. 5, 5016) (eighteen claims); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 1:16CV1946, 2016 WL 6995271 (N.D. Ohio Nov. 30, 2016) (six claims); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. CV 16-6514, Doc. 25 (C.D. Cal. Nov. 3, 2016) (twenty-four claims); *Allstate Ins. Co. v. Electrolux Home Prods., Inc.*, No. 16-4276, Doc. 17 (E.D. Pa. Sept. 22, 2016) (nine claims); *State Farm Fire & Cas. Co. v. Electrolux Home Prod., Inc.*, No. 11 C 8946, 2012 WL 1287698 (N.D. Ill. Apr. 16, 2012) (210 claims). These courts have reached similar conclusions and found claims regarding the same alleged design defect arise from the same transaction or occurrence.[3]

Here, Defendant argues that it has manufactured over 2,000 different models of ball-hitch clothes dryers since the 1990s, and that each dryer was separately installed and maintained. ECF No. 6-1 at 3-7. However, Plaintiffs' allegations do not indicate the fires would have occurred in only certain models or under certain conditions. Instead, the allegations are that the same design defect was

---

[2] One motion is still pending in the District of Colorado. *See Allstate Fire & Casualty Insurance Company et al v. Electrolux Home Products, Inc.*, No. 1:16-cv-02080-PAB-STV, Doc. 11 (D. Colo. filed Sep. 13, 2016).

[3] "[C]ourts generally construe the phrase same transaction or occurrence liberally insofar as claims arise from the same transaction or occurrence if they have a logical relation to one another." *Tinsley*, 143 F. Supp. 3d at 459 (internal quotation marks omitted). In the products liability context, other courts have ruled claims based on the same alleged design defect constitute the same transaction or occurrence. *See, e.g.*, *Abraham v. Volkswagen of Am., Inc.*, 795 F.2d 238, 251 (2d Cir. 1986) ("All plaintiffs now allege as the basis for their claims the purchase of a Volkswagen Rabbit with a valve stem seal made of defective material that will cause it to harden and break over time. We think that amply satisfies the requirement of a series of logically related transactions."); *Atkinson v. Forest Research Inst., Inc.*, No. 3:15-CV-09302, 2016 WL 1268281, at *4 (S.D.W. Va. Mar. 31, 2016) ("[T]he events giving rise to Plaintiffs' claims are logically related because each claim is based on the same allegedly defective pharmaceutical design . . . .");

5

involved in the models at issue here. The Court finds Plaintiffs' five claims arise out of the same transaction or occurrence because they involve the same alleged design defect in ball-hitch dryers produced by Defendant. *See, e.g.*, *Allstate Ins. Co.*, No. 1:16-cv-09639, Doc. 23 at p. 6 (finding claims related to forty-six different dryer fires alleging a common design defect arose from the same transaction or occurrence); *Allstate Ins. Co.*, 2016 WL 6995271, at *2-3 (same); *State Farm*, 2012 WL 1287698, at *5 (same).

Next, Defendant argues that although Plaintiffs' five claims may share common issues of law, there are "myriad factual differences between the five claims," "which will require different witnesses and evidence." ECF No. 6-1 at 4-7. Defendant cites examples of such factual differences, contending issues involving the installation, maintenance, and use of the particular dryer involved in each fire will vary from claim to claim.[4] *Id.* Although Plaintiffs' five claims arise from separate fires, they all involve the same alleged defective design present in dryer models manufactured by Defendant. Moreover, Plaintiffs allege the same causes of action—strict liability and negligence—for all five claims. The fires occurred in South Carolina, and the substantive law of South Carolina governs this diversity action. Accordingly, the Court finds Plaintiffs' five claims involve common questions of law and fact. *See, e.g.*, *Allstate Ins. Co.*, No. 1:16-cv-09639, Doc. 23 at p. 6 (finding common questions of law and fact existed because all claims were governed by the same state's products liability law and involved the issue of "whether the same ball-hitch design alleged in each claim was defective"); *Allstate Ins. Co.*, 2016 WL 6995271, at *3 (same).

Defendant further contends "[s]evering the claims early in the proceedings will facilitate judicial

---

[4] In support of these contentions, Defendant submits a declaration from a product safety engineer (Peter A. Silman), a report about clothes dryer fires issued by the Federal Emergency Management Agency, and a safety alert issued by the Consumer Product Safety Commission. *See* ECF Nos. 6-2, 6-3, & 6-4.

6

economy." ECF No. 6-1 at 8. The Court simply cannot agree with this contention. Splitting apart five claims all involving the same alleged design defect does not promote judicial economy. The alleged design defect implicates a common question of fact, and one round of discovery in a single case is more efficient than five rounds of discovery in five separate cases. *See, e.g.*, *State Farm*, 2012 WL 1287698, at *6 ("An alleged common defect in all the dryers provides enough of a connection for the three State Farm plaintiffs to proceed together at this stage of the lawsuit. Discovery related to the alleged design defect will be common to all 210 claims.").

Finally, Defendant argues that allowing the five claims to proceed to trial as a single action would cause jury confusion and unfairly prejudice Defendant. ECF No. 6-1 at 7-8. Defendant's concern is premature at this early stage in the case, as such concerns are more appropriately addressed after discovery and closer to trial pursuant to Rule 42(b). *See* Fed. R. Civ. P. 42(b) ("For convenience, *to avoid prejudice*, or to expedite and economize, the court may order a separate trial of one or more separate issues [or] claims . . . ." (emphasis added)); *Allstate Ins. Co.*, No. 1:16-cv-09639, Doc. 23 at p. 8 ("Electrolux's concerns regarding potential unfair prejudice can also be addressed under Rule 42(b), but the appropriate time to determine whether and how to proceed with separate trials under Rule 42(b) is after the conclusion of discovery, when the degree of overlap among the various claims and the potential for prejudice will be easier to assess." (internal quotation marks omitted)).

For the foregoing reasons, the Court denies Defendant's request to sever Plaintiffs' five claims.[5]

## II. Punitive Damages

---

[5] Defendant further argues that if the Court grants severance, the Court should (1) dismiss the four claims that do not satisfy the $75,000 amount-in-controversy requirement of 28 U.S.C. § 1332(a) and (2) transfer the remaining claim to the Rock Hill Division of this Court. *See* ECF No. 6-1 at 10-14. Because the Court is denying Defendant's request for severance, the Court finds Defendant's arguments regarding dismissal and transfer are moot and therefore does not address them.

Defendant contends the Court should dismiss Plaintiffs' claim for punitive damages pursuant to Federal Rule of Procedure 12(b)(6). ECF No. 6-1 at 14.

When deciding a motion to dismiss made under Federal Rule of Civil Procedure 12(b)(6), the district court must accept all well-pleaded facts alleged in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). A complaint must state a "'plausible claim for relief'" to survive a 12(b)(6) motion to dismiss. *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). The court will not dismiss the plaintiff's complaint so long as it provides adequate detail about the claims to show the plaintiff has a "more-than-conceivable chance of success on the merits." *Owens v. Baltimore City State's Attorneys Office*, 767 F.3d 379, 396 (4th Cir. 2014) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 563. A complaint will survive a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.

While Defendant makes several arguments regarding punitive damages, one argument is dispositive of this issue. Specifically, Defendant argues Plaintiffs cannot sue for punitive damages because, as subrogees, their recovery is limited to the amount they paid their insureds. ECF No. 6-1 at p. 11-12; ECF No. 9 at 7-8. Plaintiffs disagree and assert that as subrogees, they "step into the shoes of" their insureds and can "assert any legal right possessed by [their] insured[s] arising from the covered loss." ECF No. 8 at 17-18.

Neither Defendant nor Plaintiffs have cited, and the Court has not located, a South Carolina case

addressing this precise issue.[6] Thus, as a federal court sitting in diversity, the Court must predict how the South Carolina Supreme Court would decide the issue. *See Private Mortg. Inv. Servs., Inc. v. Hotel & Club Assocs., Inc.*, 296 F.3d 308, 312 (4th Cir. 2002) ("As a federal court sitting in diversity, we have an obligation to apply the jurisprudence of South Carolina's highest court, the South Carolina Supreme Court. But in a situation where the South Carolina Supreme Court has spoken neither directly nor indirectly on the particular issue before us, we are called upon to predict how that court would rule if presented with the issue." (internal footnote and citations omitted)). "In predicting a ruling by the South Carolina Supreme Court, [the Court] may also consider, *inter alia*: restatements of the law, treatises, and well considered *dicta*," *id.*, "as well as the practices of other states." *St. Paul Fire & Marine Ins. Co. v. Am. Int'l Specialty Lines Ins. Co.*, 365 F.3d 263, 272 (4th Cir. 2004) (internal quotation marks omitted).

Initially, the Court recognizes that under South Carolina law, "[w]hen an insurer pays its insured for a loss resulting from the tortious conduct of a third party, the insurer is subrogated to the rights of its insured against the third party." *Frank B. Hall & Co. of California v. Vic Bailey Lincoln-Mercury, Inc.*, 298 S.C. 282, 284, 379 S.E.2d 892, 894 (1989) (citing *Calvert Fire Ins. Co. v. James*, 236 S.C. 431, 114 S.E.2d 832 (1960)). In *Calvert*, the South Carolina Supreme Court discussed an insurer's right of subrogation, stating:

> Where the tortious conduct of a third person is the cause of a loss covered by an insurance policy, the insurer, **upon payment of the loss, becomes subrogated *pro tanto*** by operation of law to whatever rights the insured may have against the wrongdoer.
>
> Where the insurer has paid to the insured the entire loss, it may bring action either in its own name or in that of the insured

---

[6] No party has requested certification of this issue to the South Carolina Supreme Court.

9

against the tort-feasor whose wrongful act caused the loss, for in such case the whole remedial right is vested in it.

236 S.C. at 435, 114 S.E.2d at 835 (internal citations omitted) (emphasis added). The Court takes particular note of the dicta "pro tanto," which means "[t]o that extent; for so much; as far as it goes." *Black's Law Dictionary* (10th ed. 2014). Significantly, after outlining the above subrogation principles, the court in *Calvert* stated, "Upon its payment to James [(the insured)] of his loss covered by its collision policy, Calvert [(the insurer)] **became subrogated,** ***to the extent of that payment,*** to whatever rights James had against Mattson [(the tortfeasor)] arising out of the collision that caused the loss."[7] 236 S.C. at 436, 114 S.E.2d at 835 (emphasis added). Similarly, in *Pringle v. Atlantic Coast Line Railroad Co.*, the court stated "the Insurance Company is subrogated to the rights of the insured, ***to the extent of the indemnity paid***." 212 S.C. 303, 310, 47 S.E.2d 722, 725 (1948) (emphasis added).

Consistent with the dicta in *Calvert* and *Pringle*, *South Carolina Jurisprudence* provides that "[g]enerally, one who pays for damages for which a third-party is liable is subrogated ***to the extent of the payment*** made against the third party." 6 S.C. Jur. *Compromise and Settlement* § 27 (1991) (emphasis added). Moreover, *Couch on Insurance*[8] unambiguously states, "It is often said that punitive damages are unavailable in claims brought by subrogation." 16 *Couch on Insurance* 3d § 223:103. Similarly, *American Jurisprudence* states, "The general rule is that a subrogee is entitled to indemnity to the extent only of the money actually paid by him to discharge the obligation or the value of the

---

[7] The *Calvert* court also cited other state cases recognizing an insurer could sue "the tort-feasor for recovery of the amount that it had paid to the insured." *Id.* at 437-38, 114 S.E.2d at 835-36 (citing *Wolverine Ins. Co. v. Klomparens*, 263 N.W. 724 (Mich. 1935), and *United Pac. Ins. Co. v. Schetky Equip. Co.*, 342 P.2d 766 (Or. 1959)).

[8] The South Carolina Supreme Court frequently cites and relies upon *Couch on Insurance*, a comprehensive treatise on insurance law. *See, e.g.*, *Narruhn v. Alea London Ltd.*, 404 S.C. 337, 344, 745 S.E.2d 90, 94 (2013); *S.C. Farm Bureau Mut. Ins. Co. v. Durham*, 380 S.C. 506, 511, 671 S.E.2d 610, 613 (2009); *Brown v. Allstate Ins. Co.*, 344 S.C. 21, 25, 542 S.E.2d 723, 725 (2001).

10

property applied for that purpose. Thus, a subrogee cannot sue for punitive damages." 73 Am. Jur. 2d *Subrogation* § 66.

Finally, numerous cases in other jurisdictions recognize punitive damages are unavailable to a subrogee. That is because "[t]he general rule in this country is that a subrogee is entitled to indemnity to the extent only of the money actually paid by him." *Maryland Cas. Co. v. Brown*, 321 F. Supp. 309, 312 (N.D. Ga. 1971) (finding the subrogee could not recover punitive damages). *See, e.g.*, *Am. Nat. Fire Ins. Co. ex rel. Tabacalera Contreras Cigar Co. v. Yellow Freight Sys., Inc.*, 325 F.3d 924, 936 (7th Cir. 2003); *Milan v. Kausch*, 194 F.2d 263, 265 (6th Cir. 1952); *La Reunion Aerienne v. Socialist People's Libyan Arab Jamahiriya*, 477 F. Supp. 2d 131, 136 (D.D.C. 2007); *Lawyers Title Ins. Corp. v. United Am. Bank of Memphis*, 21 F. Supp. 2d 785, 810 (W.D. Tenn. 1998); *Lexington Ins. Co. v. Baltimore Gas & Elec. Co.*, 979 F. Supp. 360, 362 (D. Md. 1997); *Utica Mut. Ins. Co. v. Denwat Corp.*, 778 F. Supp. 592, 593–94 (D. Conn. 1991); *Sara Lee Corp. v. Homasote Co.*, 719 F. Supp. 417, 427 (D. Md. 1989); *Colorado Farm Bureau Mut. Ins. Co. v. CAT Cont'l, Inc.*, 649 F. Supp. 49, 51–52 (D. Colo. 1986); *Employers Ins. of Wausau v. Dunaway*, 626 F. Supp. 1144, 1146–47 (S.D. Miss. 1986); *Maryland Cas. Co.*, 321 F. Supp. at 311–12; *Prudential Prop. & Cas. Co. v. Dow Chevrolet-Olds, Inc.*, 10 S.W.3d 97, 101 (Tex. App. 1999); *Bituminous Fire & Marine Ins. Co. v. Culligan Fyrprotexion, Inc.*, 437 N.E.2d 1360, 1371 (Ind. Ct. App. 1982).[9] In sum, the purpose of subrogation is to reimburse

---

9     *But see Blue Cross & Blue Shield of New Jersey, Inc. v. Philip Morris, Inc.*, 133 F. Supp. 2d 162, 176–78 (E.D.N.Y. 2001) (distinguishing other cases "involv[ing] single subrogation claims" and allowing a subrogee insurer—a health insurance provider in a tobacco mass torts suit—to seek punitive damages because "many individual claims would not [otherwise] be brought or would not be fully vindicated to cover the total cost of a defendant's delicts to society"). Plaintiffs cite *Blue Cross & Blue Shield* and argue that not allowing them to claim punitive damages "would be to grant a windfall to Electrolux, simply because the property owner injured by Electrolux's defective dryer was adequately insured at the time of the fire." ECF No. 8 at 18-19. Plaintiffs further contend "the fact that Allstate did not personally own the property" should not be an "impediment to its ability to assert punitive damages." *Id.* at 19.

    The Court does not have a copy of the insurance policies involved, nor is there any indication that the insured policyholders' right to seek punitive damages has been assigned to Plaintiffs (the insurers) or that such right

or indemnify, and an insurer-subrogee's recovery is limited to the monetary amount actually paid. Subrogation is generally a restitutionary measure, not a mechanism for a possible windfall or profit.

Based on the foregoing authorities and the particular pleadings and allegations in this case, the Court predicts the South Carolina Supreme Court would follow the general rule and not permit insurer-subrogees to recover punitive damages. Instead, Plaintiffs' recovery is limited to the amount it paid the insureds for their losses. Accordingly, the Court grants Defendant's request to dismiss Plaintiffs' claim for punitive damages.

## Conclusion

For the above reasons, the Court **DENIES IN PART AND GRANTS IN PART** Defendant's Motion to Sever, to Dismiss, and to Transfer Divisions [ECF No. 6].

**IT IS SO ORDERED.**

| | |
|---|---|
| Florence, South Carolina<br>May 19, 2017 | s/ R. Bryan Harwell<br>R. Bryan Harwell<br>United States District Judge |

---

has in any way been extinguished or forfeited by the policyholders. Generally, "[a]n assignment is the act of transferring to another all or part of one's property, interest, or rights." *Moore v. Weinberg*, 373 S.C. 209, 219, 644 S.E.2d 740, 745 (Ct. App. 2007), *aff'd*, 383 S.C. 583, 681 S.E.2d 875 (2009). "An assignment is distinguished from a subrogation in that subrogation is an act of the law predicated on payment of the debt or claim, and operates only to secure contribution and indemnity, whereas an assignment is an act of the parties that depends generally on intention, and contemplates a continuation and transfer of the whole claim or debt." 6A C.J.S. *Assignments* § 10. "In essence, while subrogation is a designation of proceeds recovered from a wrongdoer, an assignment transfers the entire cause of action to the insurer." 16 *Couch on Insurance* 3d § 222:53. There is authority that an insurer can claim punitive damages if the insured has *assigned* its rights to the insurer. *See id.* at § 223:103 ("[T]he difference between being an assignee and a subrogee may be determinative. If the insurer were acting as a true assignee of the claim, and the claim included allegations sufficient to support punitive damages, the decision could be different."); *see, e.g.*, *Stewart Title Guar. Co. v. Azar*, 1993 WL 141797, at *9 (N.D. Ill. Apr. 30, 1993) ("Regardless of whether it may or may not claim punitive damages as a subrogee, we find that Stewart [(the insurer)] may claim punitive damages based on Stewart's insureds' assignment of their claims to Stewart."). Again, Plaintiffs do not indicate they have been *assigned* such a right.