UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Allstate Insurance Company, Allstate Property & Casualty Insurance Company, Allstate Indemnity Company, and Allstate Vehicle and Property Insurance Company,<br><br>Plaintiffs,<br><br>v.<br><br>Electrolux Home Products, Inc.,<br><br>Defendant. | Civil Action No.: 4:16-cv-03666-RBH<br><br>***LIMITED* PROTECTIVE ORDER** |

Plaintiffs brought this products liability subrogation case asserting defective "ball-hitch" style clothes dryers designed, manufactured, and sold by Defendant caused fires at several properties insured by Plaintiffs. Plaintiffs have filed a motion seeking a protective order regarding several topics identified in Defendant's Rule 30(b)(6) deposition notice. For the reasons herein, the Court grants in part and denies in part the motion and issues this *Limited* Protective Order.[1]

**Background**

Defendant identifies fourteen topics for examination in the amended Fed. R. Civ. P. 30(b)(6) deposition notice that it sent Plaintiffs. *See* ECF No. 48-2 at pp. 3–4. Plaintiffs object to the last six of these topics, which are (using the original numbering):

9. Allstate's decision to pursue its subrogation rights.

10. Allstate's underwriting policies, practices, and procedures relating to homeowner's insurance.

11. Warnings, instructions, information, or other documents Allstate provides or otherwise makes available to its insureds

---

[1] The Court decides the motion without a hearing pursuant to Local Civil Rule 7.08 (D.S.C.).

> regarding the use, care, maintenance, and installation of residential clothes dryers.
>
> 12. Allstate's policies and procedures for identifying, tracking, and pursuing subrogation against "core manufacturers." The term "core manufacturers" shall mean any entity identified, labeled, or listed by Allstate and/or any employee within its subrogation division as a "core manufacturer," or an entity thought of by Allstate as routinely being involved in a loss for purposes of determining whether or not to pursue a [] subrogation claim.
>
> 13. The role and responsibilities of Allstate's "subrogation advocates," including but not limited to pursuing subrogation against a "core manufacturer."
>
> 14. Any and all policies and procedures concerning Allstate's decision to pursue subrogation of dryer fire claims, including but not limited to pursuing subrogation of claims against "core manufacturers" and the process of referring subrogation claims to Allstate's recovery office in Roanoke, Virginia.

*Id.* Plaintiffs filed the instant motion pursuant to Fed. R. Civ. P. 26(c) seeking a protective order barring Defendant from eliciting deposition testimony regarding these six topics.[2] Defendant filed a response in opposition, and Plaintiffs filed a reply. *See* ECF Nos. 49 & 50.

## Legal Standard

**I.  Scope and Limits of Discovery**

"Discovery under the Federal Rules of Civil Procedure is broad in scope and freely permitted. At the same time, however, district courts have broad discretion in their resolution of discovery problems that arise in cases pending before them." *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 402 (4th Cir. 2003) (internal citation, quotation marks, and brackets omitted); *see*

---

[2] Plaintiffs filed this motion after the parties were unable to informally resolve the matter during a telephone conference with Judge Quattlebaum. *See* ECF No. 47; ECF No. 48-1 at p. 4. Due to Judge Quattlebaum's appointment to the Fourth Circuit, the case was reassigned to the undersigned district judge. *See* ECF No. 52.

*Seaside Farm, Inc. v. United States*, 842 F.3d 853, 860 (4th Cir. 2016) ("District courts exercise broad discretion over discovery issues."). Rule 26(b) outlines the scope and limits of discovery:

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1). Thus, "[t]he scope of discovery under Rule 26 is defined by whether the information sought is (1) privileged, (2) relevant to a claim or defense and (3) proportional to the needs of the case." *Mach. Sols., Inc. v. Doosan Infracore Am. Corp.*, 323 F.R.D. 522, 526 (D.S.C. 2018). A district court has broad discretion in deciding relevancy matters implicating Rule 26. *Watson v. Lowcountry Red Cross*, 974 F.2d 482, 489 (4th Cir. 1992); *see Nicholas v. Wyndham Int'l, Inc.*, 373 F.3d 537, 543 (4th Cir. 2004) ("Even assuming that . . . information is relevant . . . , the simple fact that requested information is discoverable under Rule 26(a) does not mean that discovery must be had."). However, "discovery is not limitless," *Doosan*, 323 F.R.D. at 526, and a court—on motion or *sua sponte*—"must limit the frequency or extent of discovery" if:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C).

3

## II. Protective Orders

Rule 26(c) permits a party to move for a protective order "on matters relating to a deposition." Fed. R. Civ. P. 26(c)(1).[3] A district "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Id.*[4] "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984). "To obtain a protective order under Rule 26(c), the party resisting discovery must establish that the information sought is covered by the rule and that it will be harmed by disclosure." *In re Wilson*, 149 F.3d 249, 252 (4th Cir. 1998); *see Wellin v. Wellin*, 211 F. Supp. 3d 793, 800 (D.S.C. 2016) ("Normally, in determining good cause, a court will balance the interest of a party in obtaining the information versus the interest of his opponent in keeping the information confidential or in not requiring its production."). "Broad allegations of harm, unsubstantiated by specific examples or articulated reasoning, do not satisfy Rule 26(c)." *Springs v. Ally Fin. Inc.*, 684 F. App'x 336, 338 (4th Cir. 2017) (internal quotation marks omitted).

## **Discussion**

As mentioned above, Plaintiffs seek a protective order barring Defendant from asking about Topics 9 through 14 listed in the amended Rule 30(b)(6) deposition notice. *See* ECF No. 48-1.

---

[3] Rule 26(c) requires the movant to attempt to resolve the dispute without seeking judicial intervention. *See* Fed. R. Civ. P. 26(c)(1). As noted above, Plaintiffs satisfied this requirement.

[4] A protective order may "(A) forbid[] the disclosure or discovery; (B) specify[] terms, including time and place or the allocation of expenses, for the disclosure or discovery; (C) prescrib[e] a discovery method other than the one selected by the party seeking discovery; (D) forbid[] inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters; (E) designat[e] the persons who may be present while the discovery is conducted; (F) requir[e] that a deposition be sealed and opened only on court order; (G) requir[e] that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way; and (H) requir[e] that the parties simultaneously file specified documents or information in sealed envelopes, to be opened as the court directs." Fed. R. Civ. P. 26(c)(1)(A)–(H).

Plaintiffs contend these topics are irrelevant to any claim or defense, and they assert Defendant is using "a tactic designed to harass and annoy its adversary, waste time and money[,] and distract the Court from the very important issues of this case." *Id.* at pp. 5–10. Defendant counters that this information is relevant because (1) Topics 9, 10, 12, and 13, and 14 bear on Plaintiffs' credibility and because (2) Topic 11 bears on Defendant's defense. *See* ECF No. 49-1.

The Court concludes Topics 9, 12, 13, and 14 are irrelevant to any claim or defense in this case and thus fall outside the scope of discovery. This is a products liability action, not an insurance bad faith action. Plaintiffs' subrogation practices have nothing to do with whether the dryers were defective. Significantly, "[w]here the insurer has paid to the insured the entire loss, it may bring action either in its own name or in that of the insured against the tort-feasor whose wrongful act caused the loss, *for in such case the whole remedial right is vested in it.*" *Calvert Fire Ins. Co. v. James*, 114 S.E.2d 832, 835 (S.C. 1960) (emphasis added).[5] In other words, the insurer/subrogee "stands in the shoes" of its insured/subrogor and acquires the *insured's* "whole remedial right." *See generally Aetna Cas. & Sur. Co. v. Sec. Forces, Inc.*, 347 S.E.2d 903, 907 (S.C. Ct. App. 1986). Plaintiffs' remedial right is no greater than that of their insureds. Plaintiffs could just have easily brought this action in the names of their insureds (i.e., by naming the Bryants, Chapmans, and Jenningses as the plaintiffs). The types of questions to be asked at a deposition are those questions that would be asked of the insureds/property owners who suffered losses allegedly caused by defective dryers made by Defendant. *See* Fed. R. Civ. P. 26(b)(1) (requiring consideration of "the importance of the discovery in resolving the issues"). Subrogation practices have nothing to do with this products liability lawsuit, and Defendant may not

---

5   *See also Spearman v. J & S Farms, Inc.*, 755 F. Supp. 137, 140 (D.S.C. 1990) ("[U]nder South Carolina law, when an insurer pays to its insured a portion of a covered loss, the insurer becomes subrogated, as a matter of law, to the rights of its insured." (citing *Calvert*)).

elicit any testimony regarding Topics 9, 12, 13, and 14.

Regarding Topic 10, however, the Court concludes that to the extent Plaintiffs provided any information regarding dryers (made by Electrolux or other similar companies) to the insureds in these three specific cases (the Bryants, Chapmans, and Jenningses) through underwriting their homeowner's insurance policies, then such information is relevant because it bears on the issue of comparative negligence, which Defendant asserts as a defense. *See* ECF No. 19 at ¶¶ 61, 83. Defendant may elicit testimony regarding Topic 10 to this *limited* extent.

Finally, the Court concludes Topic 11 is relevant to Defendant's defense of comparative negligence. Whether the fires were caused by a defect in the dryers or by the comparative negligence of the property owners (the Bryants, Chapmans, and/or Jenningses) is an important issue at stake in this action. As Defendant correctly recognizes, "[i]information about what Allstate tells its insureds about residential clothes dryers (Topic 11) is relevant to Electrolux's defense." ECF No. 49 at p. 7. *See* Fed. R. Civ. P. 26(b)(1) (requiring consideration of "the importance of the issues at stake in the action"); *see, e.g.*, *Travelers Prop. Cas. Ins. Co. v. Dist. Electrolux Home Prod.*, 2013 WL 1343163, at *5 (N.D. Ill. Apr. 2, 2013) (permitting similar discovery relating to comparative negligence). Accordingly, the Court concludes Defendant can elicit testimony about Topic 11.

## Conclusion

For the above reasons, the Court **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Motion for a Protective Order [ECF No. 48] and **ORDERS** Defendant to comply with this *Limited* Protective Order when conducting the Rule 30(b)(6) deposition of Plaintiffs. The Court **GRANTS** Defendants' related motion for an extension of time to take the Rule 30(b)(6) deposition of Plaintiffs [ECF No. 55] and **DIRECTS** the parties to complete this deposition *within forty-five (45) days of the*

*date of this Order*.

In light of the above rulings (which will likely result in additional discovery), the Court **DENIES** Defendant's motion for summary judgment [ECF No. 56] *without prejudice to refiling upon the completion of Plaintiffs' Rule 30(b)(6) deposition*. Defendant must file/renew any such motion for summary judgment *within fifteen days of the completion of Plaintiffs' Rule 30(b)(6) deposition*. The Court **TERMINATES** the parties' recent motion seeking a consent amended scheduling order [ECF No. 64] and **DIRECTS** the parties to submit a revised proposed consent amended scheduling order accounting for the new deadlines no later than February 19, 2019.

**IT IS SO ORDERED.**

Florence, South Carolina
February 15, 2019

s/ R. Bryan Harwell
R. Bryan Harwell
United States District Judge